This petition for a writ of mandamus arises out of three separate cases pending in the Calhoun Circuit Court that were consolidated during the pretrial proceedings.[2] There are approximately 2,714 plaintiffs in the three cases, and each of them asserts a toxic-tort claim against Monsanto Company and other defendants (referred to collectively hereinafter as "Monsanto"). Monsanto petitions for a writ of mandamus directing the circuit court: (1) to transfer these cases from Calhoun County to another county, pursuant to § 6-3-20, Ala. Code 1975; (2) to conduct jury-selection procedures so as to ensure a randomly selected jury, as provided by law; (3) to conduct a pretrial conference, pursuant to Rule 16, Ala.R.Civ.P., and to issue a case-management order to govern the disposition of these cases; (4) to sever all of the plaintiffs' separate claims and to try each of the 2,714 claims separately; or to conduct what it calls a "benchmark" trial, i.e., a trial in which a limited number of representative plaintiffs are designated for trial; or to resolve the case under some other procedure designed for the efficient and timely disposition of complex tort cases; (5) to rule on pending motions for summary judgment and motions in limine; and (6) to grant Monsanto's motion for a continuance.
A writ of mandamus is a drastic and extraordinary remedy "`to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. . . . In cases involving the exercise of discretion by an inferior court, [the writ of] mandamus may issue to compel *Page 352 
the exercise of that discretion. It may not, however, issue to control or review the exercise of discretion, except in a case of abuse.'" Exparte Auto-Owners Ins. Co., 548 So.2d 1029, 1030 (Ala. 1989).
On March 1, 1999, Monsanto filed this mandamus petition; trial of these cases was scheduled to begin March 15, 1999. In its petition, Monsanto claimed that the trial judge had not ruled on approximately 30 pending motions, including a motion requesting a pretrial conference, a motion for a change of venue, motions seeking to narrow and delineate the issues for trial, discovery motions to compel the plaintiffs to provide basic information regarding their claims against Monsanto, and a motion to continue. On March 8, 1999, this Court ordered answers and briefs and stayed the proceedings in the trial court pending disposition of Monsanto's petition. It would have been an abuse of discretion for the trial court to proceed to trial on these toxic-tort cases without a case-management order to govern the disposition of the cases. However, the passage of time and the intervening actions of the trial court taken at our direction have resolved many of the issues raised in Monsanto's petition.
In March 1996, Thomas Long, Sr., sued Monsanto, alleging that Monsanto was responsible for releasing polychlorinated biphenyls ("PCBs") and other harmful chemicals or pollutants into the air, soil, surface, and groundwater in, on, or adjacent to Long's property in Calhoun County. He further alleged that he had suffered damage as a result of the release of those chemicals or pollutants.
Thereafter, two additional lawsuits, each with multiple plaintiffs, were filed against Monsanto. The court consolidated the three lawsuits. These lawsuits are not class actions. The plaintiffs allege that they live in, work in, or regularly visit the area around the site of Monsanto's manufacturing plant in Calhoun County and that because of Monsanto's actions they and their property have been exposed to toxic chemicals and pollutants, including PCBs, and that, as a result of that exposure, highly toxic levels of PCBs have been detected in their bodies and on their property.
The plaintiffs seek compensatory damages and punitive damages for personal injury (including the fear of future disease) and property damage they allege were caused by Monsanto's actions. They allege negligence, wantonness, breach of duty to warn, fraud, misrepresentation and deceit, nuisance, trespass, the tort of outrage, common-law strict liability, assault, battery, and negligent and intentional infliction of emotional distress. The plaintiffs also seek injunctive relief, including an order requiring Monsanto to remove and clean up the PCBs and other toxins and pollutants that they allege Monsanto has dispersed into the air, soil, surface, and groundwater of Calhoun County. The plaintiffs also request that Monsanto be required to pay for future medical testing, monitoring, and medical treatment of the plaintiffs for ailments or diseases related to, or that may be caused by, the PCBs or other toxins.
On February 1, 1999, the trial court began to select a petit jury for these consolidated cases. It soon became apparent, however, that an insufficient number of potential jurors had been summoned; the court adjourned the trial until March 15, 1999, so that additional jurors could be summoned.[3] *Page 353 
In his response to Monsanto's petition for the writ of mandamus, the trial judge stated that he had ruled upon the pending motions, but that he had been unable to file the orders disposing of those pending motions because this Court had stayed proceedings in the trial court. On May 16, 2000, this Court lifted the stay for the express purpose of allowing the trial court to file its orders with the circuit clerk and with this Court. On October 12, 2000, the trial judge filed 30 orders ruling on the various motions.
After these orders were filed, the stay was reimposed. The plaintiffs contend that the petition should be denied, because the trial judge has now ruled upon the pending motions and his failure to rule, they argue, was the basis of Monsanto's petition. In a filing made in support of its petition, Monsanto contends that "the trial court's orders have not clarified the fundamental issues [i.e., Monsanto's challenge of venue, Monsanto's desire to have proper jury-selection procedures established, and Monsanto's desire to have an established structure for the trial of the case] which formed the basis of [Monsanto's] petition and guidance from this Court is necessary before the matter is returned to the trial court for further proceedings." However, the plaintiffs, relying uponEx parte Weaver, 781 So.2d 944 (Ala. 2000), contend that Monsanto's request that this Court provide "guidance" to the trial court on the "fundamental issues" is not within the scope of mandamus relief.
 I.
Monsanto contends that the trial court should transfer these cases from Calhoun County to another county, pursuant to Ala. Code 1975, §6-3-20, and it requests this Court to direct the trial court to transfer these cases. On February 9, 1999, Monsanto filed, under seal, a motion for a change of venue. The trial court had not ruled upon this motion when Monsanto filed its mandamus petition with this Court, and when the trial court issued its October 12, 2000, orders it did not rule on the change-of-venue motion, but stated, "At such time as this case is set for trial, [Monsanto's] motion for change of venue shall be scheduled for hearing and heard at an appropriate length of time prior to this case being called for trial."
In its motion, Monsanto gave the following reasons for requesting a transfer of the cases: the difficulty of selecting a jury in Calhoun County because of the connection of a large number of the plaintiffs to Calhoun County and their relationships with potential jurors; what Monsanto claims is the "overwhelming" pretrial publicity this case has received in newspaper articles about the case and in televised news broadcasts aired on stations that would have been seen by viewers in Calhoun County; and what Monsanto refers to as the difficulties in finding potential jurors willing to commit the time it was estimated it would take to try these cases.[4] In support of its motion, Monsanto filed videotapes of television news coverage of these cases, as well as copies of numerous newspaper articles dealing with issues presented in these cases.
This Court has never issued a writ of mandamus directing a trial court to transfer a case where the trial court has not yet ruled on a motion for a change of venue. Generally, the writ of mandamus will not issue to compel a trial court to exercise its discretion in a particular manner. *Page 354 Ex parte Ford Motor Credit Co., 607 So.2d 169, 170 (Ala. 1992).
In Braswell v. Money, 344 So.2d 767 (Ala. 1977), Braswell petitioned this Court for a writ of mandamus after the trial court had denied a motion for a change of venue. This Court wrote:
 "We recognize that local prejudice which tends to prevent a fair and impartial trial is [a] ground for change of venue. In 92 C.J.S. Venue § 143, p. 853, it is stated:
 "`. . . Generally speaking, the prejudice must exist throughout the county, and not in the particular locality, but if prejudice in a particular locality exists and the number of jurors from that locality is so proportionately large that an impartial jury cannot be selected, a change of venue may be granted. That the people of the community are generally interested in the question involved is not sufficient, but it has been held that venue may be changed if the residents of the community are interested in the event, to such an extent as to prevent a fair trial. . . .'
 "The question then is, whether petitioners have spread on the record facts and circumstances of such character as to create a reasonable belief that a fair and impartial trial cannot be obtained in Pike County. We think not."
344 So.2d at 769.
In Ex parte Shepherd, 481 So.2d 1098 (Ala. 1985), this Court issued a writ of mandamus in regard to consolidated cases, ordering the trial court to vacate its order transferring the cases from Macon County to Montgomery County. The Court stated:
 "With respect to a motion for change of venue based on the inability of a party to receive a fair and impartial trial in the county where the action is pending, it is incumbent on the movant to show that some factor (e.g., publicity of the case, stature in the community of opposing counsel or party, etc.) is so overwhelming that it results in an infection of the otherwise unbiased and impartial views and sentiments of the community from which a jury is taken, so as `to create a reasonable belief that a fair and impartial trial cannot be obtained in that county.'"
481 So.2d at 1101-02.
In Ex parte Shepherd, this Court noted that in order to obtain a change of venue, a party must show that the potential jurors have some actual
bias or prejudice, either against the moving party or in favor of the opposing party, that would make it impossible for the party to get a fair and impartial trial in the county in which the action was filed.
Monsanto contends that because there has been widespread pretrial publicity and a general public interest in these cases, the potential jurors would have already formed opinions concerning these cases and, therefore, that it would be impossible for Monsanto to receive a fair and impartial trial in Calhoun County. Monsanto also contends that the widespread publicity is only a part of the problem — the plaintiffs' contention that PCBs contaminate the water, air, and soil throughout Calhoun County, Monsanto says, creates the perception that the health of any Calhoun County resident is threatened by the alleged contamination. Monsanto argues that, after hearing the evidence, any member of the jury could see himself or herself as a potential plaintiff. The plaintiffs contend that Monsanto has presented no evidence indicating, but has merely speculated, that the pretrial publicity has created actual prejudice against Monsanto in Calhoun County. They argue that it was well within the discretion of the *Page 355 
trial court to delay ruling on the change-of-venue motion until the potential jurors could be thoroughly questioned concerning any possible prejudice. This Court stated in Ex parte Shepherd:
 "Clearly, what a particular attorney believes . . . has no bearing whatsoever on the question of whether or not [a] party can obtain a fair and impartial trial in a particular county. Indeed, in order to make a showing of unfairness . . . the movant must present evidence that the particular [factor] actually results in bias or prejudice against the movant, rendering a fair and impartial trial in a given county impossible."
481 So.2d at 1102. In its motion for a change of venue, Monsanto stated:
 "The fact that this overwhelming publicity has had an impact on the venire is demonstrated by an occurrence during the venire qualification process on February 1, 1999. . . . When the court asked the venire if any jurors would be willing to serve for [sic] a case that could last as long as a year, [one of Monsanto's attorneys] heard two members of the venire . . . immediately speculate that the case must be the Monsanto PCB case. . . . This exchange is telling evidence that the pretrial publicity has impacted any potential venire in Calhoun County."
While the juror speculation Monsanto refers to demonstrates that members of the venire were aware that a case involving Monsanto and PCBs was pending, it does not demonstrate an actual bias or prejudice against Monsanto that would make it impossible for Monsanto to get a fair and impartial trial in Calhoun County. Thus, we cannot say that the trial judge, in postponing his consideration of the motion to change venue, abused his discretion, and we will not issue a writ of mandamus directing him to rule in a particular manner.
However, we are concerned about the potential bias created by the numerous newspaper articles and the extensive television news coverage of this case, and about the possibility that Calhoun County citizens, while serving as jurors, could come to consider themselves to be in harm's way because of the alleged wrongdoing by Monsanto. While we do not find a sufficient basis for directing the trial court to grant the motion for a change of venue, we urge the trial judge to carefully consider Monsanto's motion and to do so in a timely manner, because the trial court has indicated that if the cases are transferred then a special judge should be appointed to hear them. We are certain that in ruling on the change-of-venue issue, the trial judge will carefully consider the materials Monsanto has presented to this Court (copies of the newspaper articles and videotapes of the television news coverage of these cases), as well as the information Monsanto has presented regarding the effect this publicity, and the evidence to be presented at trial, might have on jurors in Calhoun County. We are certain that the judge will carefully weigh the disadvantages to the plaintiffs of transferring these cases against the advantage to Monsanto of transferring them to a forum where, even if there is significant pretrial publicity, the jury venire will not be composed of potential victims of the alleged wrongful conduct.
The trial judge has requested that if this Court orders a change of venue (and it does not), then it should also appoint a special judge to hear these cases. Monsanto also has requested that we appoint a special judge to handle these cases. We have declined to require the trial court to grant Monsanto's motion to change venue. Because a determination by the trial court as to the appropriate venue for these cases affects the issue whether a special judge *Page 356 
will be appointed to try these cases, and because deferring a resolution of the venue issue until immediately before trial could put all parties to the expense of unnecessary preparation if the order deciding venue is then subject to a stay pending review by a petition for an extraordinary writ, we direct the trial court to dispose of the motion for a change of venue as the first order of business in regard to these cases. Should the trial judge order a change of venue, then we will, at that time, consider a request to appoint a special judge. If the trial court grants the change-of-venue motion, it may defer ruling on the jury-selection procedures and the trial format until a determination is made whether to appoint a special judge. The special judge, if appointed, should rule on jury-selection procedures and the trial format.
 II.
Monsanto argues that the jury-selection procedures used by the trial court on February 1, 1999, violated its right to a randomly selected jury[5] and it asks us to direct the trial court to quash the partial venire it selected and to select another venire, this time following the jury-selection procedures provided by law. In his response, the trial judge states that the jury-selection procedure used in these cases was permissible and was in accordance with applicable law; he further states that this issue was moot because, he said, he notified all the potential jurors summoned for these cases that their services were not needed. We agree that this issue is moot; and Monsanto's arguments on this issue do not support the issuance of a writ of mandamus.
However, we point out that a better method for selecting a jury in what appears to be a protracted case would be to ask the members of the venire if any of them would suffer a hardship by serving on a jury for a prolonged period, as opposed to asking the members if they were willing to serve on a jury for a prolonged period.
 III.
Monsanto contends that the trial court failed to conduct a pretrial conference, pursuant to Rule 16, Ala.R.Civ.P., and that it should have, but did not, issue a case-management order to govern the disposition of these cases. Monsanto asks this Court to direct the trial court to hold a pretrial conference and to issue a case-management order. In his answer, the trial judge states that this issue is also moot because, he says, he held pretrial conferences in these cases, including one such conference held on March 3, 1999. Thus, we agree that this issue is moot; this issue provides no basis for granting Monsanto's petition for the writ of mandamus.
However, as we have already pointed out, it would clearly be an abuse of discretion *Page 357 
for a trial court to attempt to try over 2,700 toxic-tort claims without a case-management order to govern the disposition of those claims. Monsanto filed, as an example of the kind of case-management order it contends is necessary in these cases, a copy of the case-management and scheduling order entered on May 19, 1999, in the case of Owens v. Monsanto Co. (CV-96-P-0440-E), a case pending in the federal district court. We have attached, as an appendix to this opinion, a copy of the Owens order so that the trial judge may refer to it when it is drafting a case-management order to govern the trial of these cases. However, we should not be understood as directing that the trial of these cases should proceed exactly in the manner described in the case management and scheduling order in Owens.
 IV.
Monsanto requests that this Court direct the trial court 1) to sever all of the plaintiffs' claims and try each claim separately; or 2) to conduct a "benchmark" trial, i.e., a trial in which a limited number of representative plaintiffs are designated for trial; or 3) to resolve the case under some other procedure designed for the efficient and timely disposition of complex tort cases. Monsanto contends that its petition presents this Court with a unique opportunity to educate the bench and bar and to set some guidelines for handling complex, mass-tort cases.
In his response, the trial judge asks that if we order separate trials, we appoint a special judge to handle those separate trials.
At the March 3, 1999, hearing, the trial judge stated that his plan of action was to hear, at one proceeding, the evidence relating to liability issues as to all claims and then, if the liability issue was decided adversely to Monsanto, to try each individual plaintiff's causation and damages issues.
In Ex parte Humana Medical Corp., 597 So.2d 670, 671 (Ala. 1992), this Court stated, "`[A]bsent an abuse of discretion, the trial court will be allowed to "shape the order of the trial" through the provisions of Rule 42, [Ala.R.Civ.P.].'" (Quoting Ex parte Marcrum, 372 So.2d 313, 315
(Ala. 1979)). We find no abuse of discretion on the part of the trial court, and we find no basis for issuing a writ of mandamus directing the trial court to sever all of the plaintiffs' claims and to try each of them separately. Additionally, the issuance of a case-management order to govern the orderly disposition of these cases at trial should resolve any concerns Monsanto might have without the necessity of separately trying approximately 2,714 claims.
 V.
Monsanto contends, in regard to its request for a briefing schedule, that "guidance from this Court is necessary before . . . the trial court [is permitted to conduct] further proceedings."
However, in Ex parte Weaver, 781 So.2d at 949, this Court stated:
 "Moreover, the writ of mandamus will not issue to compel a trial court to exercise its discretion in a particular manner. That is precisely what [the petitioner] asks this Court to do: to review an evidentiary ruling that he contends was erroneous and, based on the review, `to provide guidance on the scope of judicial discretion' allowed in admitting or excluding similar-incident evidence. We decline to do so. The trial court's ruling does not prevent Weaver from offering evidence of a subsequent accident, and if he offers that evidence and the trial court excludes it, then Weaver *Page 358 
may appeal that ruling once a final judgment is entered."
(Citation omitted.)
We find no basis for this Court to intervene in the pending cases, other than to require that the venue issue be resolved in a timely manner before any other issues are dealt with and to urge the trial court to timely issue a case-management order. Thus, we deny Monsanto's petition for the writ of mandamus.
PETITION DENIED; STAY LIFTED.
Moore, C.J., and See, Lyons, Brown, Johnstone, Harwood, and Stuart, JJ., concur.
Woodall, J., concurs in the result.
[2] Two of those cases are named in the style of this mandamus proceeding. The third case, Abbott et al. v. Monsanto Co. et al.
(CV-97-767), was originally filed in the Calhoun Circuit Court. The case action summary sheet indicates that case was severed and removed to the federal district court. However, in their materials submitted to this Court, the parties treat that third case as if it were still consolidated with the other two.
[3] Of the pool of potential jurors summoned on February 1, 1999, only 14 persons indicated that they would be able to commit to serve on a jury in a trial that could last for months and possibly as long as a year.
[4] Monsanto estimates that a trial of these cases could last as long as a year.
[5] On February 1, 1999, the trial court informed the pool of prospective jurors that the trial might last for an extended period and that their services might be required for several months and perhaps even for as long as a year. The trial court asked the prospective jurors if any of them would be willing to serve on a jury that would require such a long commitment. Only 14 persons indicated they were willing to serve on such a jury, and these 14 prospective jurors were asked to return on March 15, 1999.
Monsanto acknowledges that the trial court was seeking to deal with legitimate concerns of the potential jurors involving job concerns, physical condition, family matters and obligations, etc. Monsanto contends, however, that the method used by the trial court made the potential jurors aware of what case they would be hearing and allowed them then to volunteer themselves onto the jury. That procedure, it says, threatened the impartiality of the venire and any jury derived from the venire. *Page 359 
APPENDIX
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION
FILED 99 MAY 18 PM 1:50 U.S. DISTRICT COURT N.D. OF ALABAMA WALTER OWENS, et al., ) )
Plaintiffs, ) ) CASE NO. CV-96-P-0440-E v. ) ) ENTERED MONSATO COMPANY, ) MAY 19 1999 )
Defendant. ) ______________________________________)
CASE MANAGEMENT AND SCHEDULING ORDER
Pursuant to Fed.R.Civ.P. 16(b) and following a conference with counsel for all parties of the record, the Court hereby enters the following Order establishing a Schedule and Case Management Plan for this action.
1. CASE MANAGEMENT PLAN
1. This case will be tried in phases. Phase one will be consolidated common issues (if any) trial for all of the plaintiffs in combination with a trial of individual issues, including specific causation and damages, for a limited number of selected plaintiffs. The purpose of selecting certain plaintiffs is to have a complete trial of all the issues for those selected. It is not intended that the selected plaintiffs will be representative of other plaintiffs in the sense that the verdicts on their individual claims will be binding in any way on other plaintiffs or defendant. This approach, however, is intended to prevent the relitigation of common issues in subsequent trials and to provide *Page 360 
some general guidance to the Court and the parties on the amount of damages, if any, a jury might award to the individual plaintiffs for the various kinds of claims asserted.
2. There is a dispute between the parties as to what common issues apply to all plaintiffs. The "common issues", if any, which will be tried and binding on some or all plaintiffs and the defendant will be determined by the Court at a later date.
3. Within thirty days of this Order, plaintiffs will submit a report to the Court and defendant identifying and describing the categories of plaintiffs and claims that plaintiffs propose to try in this first trial. This report shall include an explanation of the claims and the appropriateness of each category of claims and plaintiffs. The defendant will file its written response and objections within fifteen days of the date of plaintiffs submission.
4. The Court will schedule a hearing after the submissions of the parties under ¶ 3 above for final selection of the categories of plaintiffs and claims for the first trial. Within thirty days after the Court approves the categories of plaintiffs and claims for the first trial, plaintiffs will designate specific plaintiffs for each category approved by the Court.
5. Within fifteen days after plaintiffs designate the specific plaintiffs for the first trial, the defendant will file any objections it has to such designations. Thereafter, the Court will schedule a hearing, if necessary, for final selection of the plaintiffs for the first trial.
6. Discovery will be focused on the selected plaintiffs and any other plaintiffs who will be witnesses at the first trial; provided, that counsel for the plaintiffs will provide defendant's counsel within thirty days the background, factual information, testing data, and other non-privileged *Page 361 
information gathered from all the individual plaintiffs in prior interviews, questionnaires, and meetings, specifically including the following:
The plaintiff's name, race, sex, date of birth, social security number, marital status, names and ages of children, current residence address, previous residence addresses within Anniston and the dates of residence at those addresses, property ownership to the extent that there is any damages claim relating to the property, factual information about possible pathways of exposure to PCBs, documents and results of any testing of property for the presence of PCBs, medical history, names of medical providers, and such other information regarding physical condition, symptoms, illnesses, and diseases as has already been gathered by plaintiff's counsel in this action. The plaintiffs' obligation to provide information pursuant to this paragraph is continuing.
The parties have agreed on the following procedure for collection of medical records:
a. By June 1, 1999 plaintiffs' counsel shall deliver a signed medical authorization for each plaintiff to a records collection service jointly selected by the plaintiffs' counsel and defendant's counsel. The medical authorization shall permit the records collection service to obtain a copy of the plaintiff's medical records.
b. The records collection service will deliver a copy of all medical records collected except those obtained from any psychiatrist, marriage counselor, therapist. alcohol or drug treatment facility or provider (the "Exempted Records") to counsel for plaintiffs and counsel for defendant. It is expressly agreed between the parties that the production of such documents does not constitute the waiver of any objection or privilege and that the defendants may assert any such *Page 362 
objection or privilege at the appropriate time prior to or during trial. It is also expressly agreed among the parties that allowing "Exempted Records" first to be sent to plaintiffs' counsel for review and possible objections does not constitute a waiver of any argument that defendant may assert to obtain and use the records.
c. The records collection service will deliver to counsel for the plaintiffs the original copy of the Exempted Records collected in order that said counsel may review the records to determine whether or not objectionable material is found in the records. The records collection service will deliver to counsel for the defendant at the same time a list of the Exempted Records showing the plaintiff's name and the provider's identity. Plaintiffs' counsel may object in writing to the production of the Exempted Records, or any portion of them, to defendant's counsel within twenty-one days after the records are provided to plaintiffs' counsel and is an objection is made, the specific basis for the objection shall be stated in writing. If there is no objection within twenty-one days, the records will then be made available to defendant's counsel by the collection service. If there is an objection, the parties first shall seek to resolve the objection informally but if they are unable to do so, defendant's counsel may then file a motion to compel the production of the records.
d. All costs of the records collection service shall be borne by the defendant, except that plaintiffs will pay the reasonable copying expenses for the copies provided to their counsel.
e. Plaintiffs' counsel also shall obtain signed authorizations from each plaintiff allowing the defendant to obtain a copy of each plaintiff's social security records, educational records, and employment records. These authorizations, however, shall be retained by the plaintiffs' counsel until defendant's counsel expressly requests the authorizations from specific plaintiffs. At that time, *Page 363 
counsel shall confer in good faith to reach an agreement about the procedures for obtaining , reviewing and objecting to such records, and if they are unable to agree, shall submit the dispute to the Court for resolution.
II. SCHEDULING
1. Pleadings and parties: No causes of action, defenses, or parties may be added after June 1, 1999 except for good cause shown.
2. Discovery: All discovery regarding plaintiffs selected for a first trial in this action and discovery from defendant shall be commenced so as to be completed on or before December 31, 1999.
3. Expert Testimony: On or before September 1, 1999, the plaintiffs shall disclose the identities of any other plaintiffs who will testify at the first trial and the identities of any person who may be used at the first trial to present expert testimony and shall submit a report pursuant to Fed.Civ.R.P. 26(a)(2)(B) from each expert. On or before September 30, 1999, the defendants shall disclose the identities of any person who may be used at the first trial to present expert testimony and shall submit a report pursuant to Fed.R.Civ.P. 26(a)(2)(B) for each such expert. On or before October 31, 1999, the parties may add expert witnesses necessitated by the disclosures. Discovery depositions of expert witnesses shall commence as soon as reasonably practical after the disclosures. If an expert witness is not made available in a reasonable manner, time and place before the expiration of discovery the party employing such expert may not call such expert at trial.
4. Dispositive motions: To the extent possible, dispositive motions and supporting *Page 364 
briefs on the legal basis for the causes of action asserted by plaintiffs shall be filed no later than July 15, 1999, without prejudice to the refiling of those motions or the filing of additional motions at a later date. Plaintiffs shall have thirty days in which to file their responsive briefs. Deadlines for filing any other dispositive motions will be determined at the status conference referenced below.
5. Pretrial Conference: A status and scheduling conference shall be scheduled on or after November 15, 1999. Unless otherwise ordered at the scheduling conference, the parties will prepare and file by January 10, 2000, a Proposed Final Pretrial Order for the first trial.
6. Trail: The first trial will be set as soon as possible after February 1, 2000.
/s/____________________________ U.S. District Court Judge