HARWOOD, Justice.
This petition for a writ of mandamus arises from a number of actions in which *37 1,675 plaintiffs, all individuals who claim that they were injured by exposure to isocyanate[1] while employed as coal miners, have sued 11 defendants, including Flexible Products Company and Micon Products International, Inc., all of which are involved in the manufacture, use, and distribution of isocyanate. The defendants seek an order from this Court requiring the trial court to set aside its case-management order (“CMO”), which consolidates the underlying actions and sets out various guidelines for litigating those actions in the Bessemer Division of the Jefferson Circuit Court, or, in the alternative, requiring the trial court to modify its CMO so that the trials of the actions are consolidated according to terms the defendants deem appropriate. The defendants also challenge the trial court’s determination that venue for all of the plaintiffs is proper in Jefferson County and seek an order requiring the transfer of certain of the actions to Tuscaloosa County. Finally, the defendants challenge that aspect of the CMO that envisions the appointment of a special master to try the plaintiffs’ individual claims in groups of 25.
The underlying cases began with three actions brought by the plaintiffs: Bice v. Micon, Inc. (CV-01-1194), filed in September 2001; Abernathy v. Micon, Inc. (CV-01-1341), filed in October 2001; and Acklin v. Micon, Inc. (CV-02-1518), filed in October 2002. In all three cases, the plaintiffs asserted claims of negligence, wantonness, outrage, failure to warn, violation of the Alabama Extended Manufacturer’s Liability Doctrine (“the AEMLD”), misrepresentation, concealment, breach of warranties, and conspiracy. On August 24, 2004, the plaintiffs moved to consolidate the three cases pursuant to Rule 42, Ala. R.CivJP., and on November 17, 2004, the trial court issued the CMO addressing the motion to consolidate. In pertinent part, the CMO states:
“2. Motion to Transfer
“The Court finds under the Alabama Code of 1975, § 6-3-7(c), that venue is proper where the cases sought to be venued together involve common issues of law or material fact and the action can be maintained more efficiently and economically for all parties if consolidated and tried here in the Bessemer Division of Jefferson County and the interest of Justice supports the joinder of the parties as Plaintiffs in one action as provided by [Ala. R. Civ. P.] Rule 42.
“3. Consolidation
“The above styled cases are consolidated for pretrial purposes, discovery, motions, and trial under [Ala. R. Civ. P.] Rule 42(a). This order constitutes a determination that these actions are consolidated for trial. They are consolidated because they contain common questions of fact and are sufficiently complex. The claims by the Plaintiffs in those cases are significantly the same and raise the common questions of fact.
“The Court has determined that these 3 cases and any other cases subsequently filed against these Defendants shall receive aggregated treatment to bring the claims and case together for pretrial management, settlement, or trial.
*38 “These 3 cases in reality are 1600 or more cases involving mass tort litigation. Here there is an event or series of related events injuring a large number of people. The claims in these cases arise out of an identifiable event or product and it affects a very large number of people, it is alleged. The cases are consolidated even though more than one work site was involved, Plaintiffs had more than one occupation within the mines, and the exposures occurred over a fairly long period with different illnesses resulting.”
The CMO further designates a master file as a repository for all pleadings and schedules a regular status conference every four weeks to oversee the litigation and to provide the parties with regular opportunities for filing additional motions as necessary. Under the heading, “5. Refinement of Issues,” the CMO states:
“(A.) The counsel for Plaintiffs and Defendants shall be prepared.at the status conference to present to the Court the common issues including the dangers to human health posed by isocyanate exposure, Defendants’ knowledge regarding those dangers, the adequacy of Defendants’ warnings and Defendants’ misrepresentation regarding the safety and their concealments of the known dangers of their products. The parties are to determine the issues appropriate for aggregate determination. These issues will be tried at the consolidated common issues trial with some Plaintiffs presenting their claims against Defendants on all issues as to liability and causation which will yield findings on common issues,
“(B.) The Plaintiffs in the common issues trial will be those in the original Bice case. The remaining Plaintiffs in this trial shall be eight chosen by the Plaintiffs’ counsel from the Acklin case who worked for Drummond Company, Inc. This will give Plaintiffs from each of the three companies: Jim Walter [Resources, Inc.], U.S. Steel [Co.], and Drummond [Coal Co.] The remaining plaintiffs will be tried on the issues of specific causation and damages in later proceedings in which the findings on common issues from the first trial would apply.
“(C.) Mediation. The remaining Plaintiffs shall be ordered to mediation before the Honorable Art Hanes, retired Circuit Judge. These mediations shall occur without a stay on discovery.
“(D.) Special Master. A Special Master shall be appointed by the Court to hear twenty-five Plaintiff eases at a time. These Plaintiffs are to be selected by Plaintiffs’ counsel[;] however, the Plaintiffs shall be selected on a scale from best case to wors[t], taking into consideration their exposure, injuries, and damages. The Special Master shall be the Honorable Braxton Kittrell, retired Circuit Judge.”
Finally, in section 8, the CMO provides:
“Scheduling the trial for injury, causation and damages on November 29, 2004, the Plaintiffs’ counsel will designate the common issues trial group of thirty (30) plaintiffs in the consolidated actions. On the first day of every successive month, the Plaintiffs’ counsel will designate, for discovery, twenty-five (25) plaintiffs in these consolidated actions. On the date that a plaintiff is so designated, the stay of discovery against that plaintiff is lifted and will proceed in accordance with the schedule below.
“Designation Date (D-Date)
“Plaintiffs’ counsel must designate twenty-five (25) plaintiffs, providing for each designated plaintiff the following:
*39 “a) responses to master discovery (initial disclosures, interrogatories, and document request); and
“b) signed, written authorizations for the release of medical records, workers compensation records, and employment records.
“During the course of discovery, each defendant may serve additional written discovery requests upon each plaintiff.
[[Image here]]
“140 days after D-Date
“Plaintiffs must submit list of experts expected to offer testimony in the causation and damages phase for this group.
“150 days after D-Date
“Defendants must submit list of experts expected to offer testimony in the causation and damages trial phase for this group.”
The CMO also provided for the selection of lead counsel by the lawyers for the defendants, and the CMO set out a scheduling order of completion dates for various aspects of the litigation of the common-issues trial. All of the plaintiffs are represented by the same counsel. Finally, the CMO sets out schedules for the trials of the 25-member groups noted in the CMO following the trial of common issues.
The defendants assert that they are entitled to a writ of mandamus requiring the trial court to set aside the CMO, which they say the trial court exceeded its discretion in entering. This Court reviews the defendants’ petition under the following standard:
“A writ of mandamus is an extraordinary remedy, and it will be ‘issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts & Serv. Co., 590 So.2d 252 (Ala.1991). It is well settled that ‘a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment.’ Ex parte Central Bank of the South, 675 So.2d 403, 406 (Ala.1996).”
Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998).
The trial court’s authority to manage its cases through consolidation is governed by Rule 42(a), Ala.R.Civ.P.:
“(a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.”
We have said that “[circuit judges have broad powers under the Alabama Rules of Civil Procedure ... to order actions consolidated.” State v. Reynolds, 887 So.2d 848, 854 (Ala.2004). A trial court’s authority to consolidate actions is clearly within its discretion.
“[Rule 42(a), Ala. R. Civ. P.,] specifically recognizes the propriety of consolidation, as well as the trial court’s discretion to order consolidation as necessary to reduce costs or delay. See Bateh v. Brown, 293 Ala. 704, 310 So.2d 186 (1975) (a trial court has broad discretion as to whether it will allow consolidation, *40 provided that consolidation does not prejudice any of the parties).”
Owens-Corning Fiberglass Corp. v. James, 646 So.2d 669, 674 (Ala.1994). See also State v. Reynolds, supra; Callahan v. Weiland, 291 Ala. 183, 279 So.2d 451 (1973); and Teague v. Motes, 57 Ala.App. 609, 330 So.2d 434 (Ala.Civ.App.1976).
In Ex parte Monsanto Co., 794 So.2d 350 (Ala.2001), this Court addressed an analogous case in which the defendants challenged, by way of a petition for a writ of mandamus, the trial court’s consolidation of the claims of property damage and personal injury of some 2,700 plaintiffs arising from the defendants’ use of poly-chlorinated biphenyls (“PCBs”). In that case, the defendants sought a case-management order from the trial court analogous to the case-management order entered by a federal district court that was entertaining similar claims against the defendants by various plaintiffs.[2] The defendants also sought, alternatively, a severance of all the plaintiffs’ claims or a “benchmark” trial as a means of resolving the litigation. The trial court had declined their requested relief on the ground that it was in the process of conducting pretrial conferences. We noted the standard governing the availability of a writ of mandamus as a means to compel the exercise of the trial court’s discretion as follows: “ ‘In cases involving the exercise of discretion by an inferior court, [the writ of] mandamus may issue to compel the exercise of that discretion. It may not, however, issue to control or review the exercise of discretion, except in a case of abuse.’” 794 So.2d at 351-52 (quoting Ex parte Auto-Owners Ins. Co., 548 So.2d 1029, 1030 (Ala.1989)).
In this case, the defendants first argue that the trial court exceeded its discretion in consolidating the actions at issue because, they say, there are no true “common issues.” The defendants assert that each of the 1,675 plaintiffs presents a unique set of circumstances that can be addressed only by a trial unique to that plaintiff. They argue that the plaintiffs’ claims are based on different working conditions and locations, different degrees of exposure to isocyanate, and different injuries allegedly caused by that exposure. The defendants also assert that their differing involvement with the chemical, whether as manufacturer, distributor, or user, argues against any conclusion that these cases present common issues.
The plaintiffs reply that the trial court correctly ascertained the potential of common issues arising from the fact that all of the plaintiffs were employed as coal miners and all allege that they suffered injury from exposure to isocyanate as a result of their employment. The plaintiffs contend that issues common to all of the plaintiffs’ claims include the extent of the danger to human health resulting from exposure to isocyanate, whether the defendants had knowledge of any dangers presented by isocyanate, whether the defendants concealed any danger, whether the defendants gave adequate warning of any dangers, and whether the defendants conspired to conceal any dangers resulting from exposure to the chemical.
At this point in the litigation, however, the phase set out in the CMO for permitting identification of common issues has not taken place. Thus, we are presented with a situation in which the defendants can establish that the trial court has exceeded its discretion only by showing that no common issue exists. That is, because before a'writ of mandamus will *41 issue the petitioner must establish a “clear legal right” to relief, mandamus relief is not available in situations where such rights have not vested.
“For the writ of mandamus to issue ‘ “[t]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief. The writ will not issue where the right in question is doubtful.” ’ Goolsby v. Green, 431 So.2d 955, 958 (Ala.1983) (quoting Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102 (Ala.1981)). This Court does not issue the writ of mandamus based on mere speculation as to the possible occurrence of future events.”
Ex parte Vance, 900 So.2d 394, 398-99 (Ala.2004).
Further, we have recognized that consolidation can provide an appropriate means for resolving cases involving multiple claims and defendants. In Monsanto, supra, this Court denied the defendants’ petition for mandamus relief and approved the trial court’s “plan of action ... to hear, at one proceeding, the evidence relating to liability issues as to all claims and then, if the liability issue was decided adversely to [the defendants], to try each individual plaintiffs causation and damages issues.” 794 So.2d at 357. We stated:
“In Ex parte Humana Medical Corp., 597 So.2d 670, 671 (Ala.1992), this Court stated, ‘ “[AJbsent an abuse of discretion, the trial court will be allowed to ‘shape the order of the trial’ through the provisions of Rule 42, [Ala.R.Civ.P.].” ’ (Quoting Ex parte Marcrum, 372 So.2d 313, 315 (Ala.1979)). We find no abuse of discretion on the part of the trial court, and we find no basis for issuing a writ of mandamus directing the trial court to sever all of the plaintiffs’ claims and to try each of them separately. Additionally, the issuance of a ease-management order to govern the orderly disposition of these cases at trial should resolve any concerns [the defendants] might have without the necessity of separately trying approximately 2,714 claims.”
794 So.2d at 357. Thus, in circumstances analogous to the instant situation, this Court has approved using a case-management order and consolidating actions as a means for effectively dealing with a large number of claims arising in a “toxic tort” context.
However, the defendants assert that, because of the particular circumstances of the underlying actions, the consolidation of those actions under the CMO will deny them the opportunity for a fair trial. Specifically, the defendants argue that because each plaintiffs claim is factually unique, the trial court exceeded its discretion in entering the CMO requiring consolidation. They also assert that consolidation will prejudice them because, they say, it will be practically unworkable and will cause undue expense and juror confusion. The defendants’ emphasis on the factual circumstances of the particular ease of each individual plaintiff does not compel the conclusion that there is no common issue, or issues, suitable for resolution through a consolidated trial. In addition to Monsanto, we note that many courts in similar situations involving exposure to allegedly dangerous substances have recognized the utility and validity of consolidation as a tool for avoiding needlessly duplicative trials. For example, in Owens-Corning Fiberglass Corp. v. James, supra, this Court rejected the defendant’s argument that the consolidation of the plaintiffs’ claims for damages arising from their alleged exposure to asbestos resulted in confusion of the jury. The Court stated:
*42 “As the Eleventh Circuit Court of Appeals stated in Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1496 (11th Cir.1985), ‘[t]he cases here [involving asbestos litigation] present precisely the kind of tort claims a court should consider consolidating for trial.’ We conclude, after reviewing the record and the briefs, that there is no basis for holding that the consolidation of these three eases resulted in a confused jury and a flawed verdict. Instead, it appears that common questions of law and fact existed in these cases, both with respect to initial legal liability and with respect to medical causation, and that the simultaneous trial of these cases furthered the desired goals of Rule 42(a) by avoiding wasteful relitigation and a duplication of judicial effort. See Hendrix, supra.”
646 So.2d at 674. We note that other jurisdictions have also recognized the value of consolidation when the underlying claims arise from exposure to dangerous substances. See, e.g., In re New York Asbestos Litigation, 149 F.R.D. 490 (S.D.N.Y.1993), aff'd, 72 F.3d 1003 (2d Cir.1995), vacated on other grounds, 518 U.S. 1031, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996); ACandS, Inc. v. Abate, 121 Md.App. 590, 710 A.2d 944 (1998), abrogated on other grounds, John Crane, Inc. v. Scribner, 369 Md. 369, 800 A.2d 727 (2002); West Virginia ex rel. Appalachian Power Co. v. MacQueen, 198 W.Va. 1, 479 S.E.2d 300 (1996).
We conclude that the defendants have not shown that there is no possibility that the plaintiffs’ claims present common issues, and we conclude that, under the circumstances of this case, consolidation in itself is not prejudicial to the defendants as a matter of law. In fact, the trial court’s statement of the possibly common issues— “the dangers to human health posed by isocyanate exposure, Defendants’ knowledge regarding those dangers, the adequacy of Defendants’ warnings and Defendants’ misrepresentation regarding the safety and their concealments of the known dangers of their products” — lists aspects of the case that potentially meet the commonality requirement. See, e.g., University Fed. Credit Union v. Grayson, 878 So.2d 280 (Ala.2003)(discussing whether alleged misrepresentations in claims brought by the plaintiffs had sufficient commonality to support inclusion in a class for class certification under Rule 23, Ala. R. Civ. P.). For example, if, after the trial of common issues, it is determined that exposure to isocyanate is not harmful to humans, then such a determination would effectively conclude this litigation.
Moreover, we reject the argument presented by the defendants that the propriety of the CMO rests upon a determination of whether any common issues “predominate” over the other issues in the actions to be consolidated. A weighing of the relative dominance of the particular issues presented by actions to be consolidated (an exercise that would be speculative in actions such as this where the common issues have yet to be framed) is not required by Rule 42. Such a weighing exercise would also fly in the face of the trial court’s discretionary authority .to manage its cases. Monsanto and Owens-Corning, supra. Although the facts of the instant actions potentially present common issues, some of which could dispose of the litigation entirely if found adversely to the plaintiffs, and therefore be said to “predominate,” such as whether exposure to isocyanate is harmful, the appropriate standard for assessing the propriety of the a trial court’s consolidation is whether the trial court exceeded its discretion in ordering consolidation. Rule 42, Ala. R. Civ. P.; Monsanto; and Owens-Corning, supra.
*43 Further, we do not regard cases discussing the improper joinder of plaintiffs’ claims, e.g., Crossfield Products Corp. v. Irby, 910 So.2d 498 (Miss.2005), and Janssen Pharmaceutica, Inc. v. Bailey, 878 So.2d 31 (Miss.2004), cases brought to our attention by the defendants, as persuasive authority inimical to the trial court’s consolidation of various claims and issues in these actions. Permissive joinder of parties, governed by Rule 20, Ala. R. Civ. P., implicates different requirements than consolidation under Rule 42, most notably that joinder is appropriate only where the plaintiffs present claims “arising out of the same transaction, occurrence, or series of transactions or occurrences.... ”
However, in shaping the common issues under the CMO, the trial court must be cognizant of the considerations that are necessary to avoid prejudice to all of the parties. An instructive discussion of such considerations was presented by the Supreme Court of Texas in In re Van Waters & Rogers, Inc., 145 S.W.3d 203 (Tex.2004). In that case, the court considered a petition for a writ of mandamus sought by nine defendants challenging the trial court’s consolidation of the claims of 20 of 454 plaintiffs against approximately 55 defendants. The plaintiffs had formerly worked at a company’s manufacturing plant in McAllen, Texas. All the plaintiffs were represented by the same counsel, and all alleged injuries were caused by exposure to a combination of chemicals and products, a so-called “toxic soup,” during their work at the plant. The defendants were various manufacturers and suppliers of the chemicals that allegedly harmed the plaintiffs. The court in Van Waters discussed the factors influencing its review of the consolidation as follows:
“In determining whether various claims are appropriate for consolidation, ‘the dominant consideration in every case is whether the trial will be fair and impartial to all parties.’[9] Consolidation should be avoided if it would cause ‘ “confusion or prejudice as to render the jury incapable of finding the facts on the basis of the evidence.” ’[10] If an injustice will result from consolidated trials, a trial court has no discretion to deny separate trials.’[11]
“To aid in the determination of whether consolidation is appropriate in a mass tort case alleging exposure in a workplace, this Court in Ethyl adopted the ‘Maryland factors’ [3]: (1) whether the plaintiffs shared a common work site; (2) whether the plaintiffs shared similar occupations; (3) whether the plaintiffs had similar times of exposure; (4) whether the plaintiffs have a similar type of disease; (5) whether plaintiffs are alive or deceased; (6) the status of discovery; (7) whether all plaintiffs are represented by the same counsel; (8) the type of cancer alleged, if any; and (9) the type of products to which the plaintiffs were exposed.[12] In Ethyl we explained the considerations in applying these factors:
“ ‘As the number of Maryland factors that different cases have in common increases, the number of those claims that can be tried together may increase. But there is no mathematical formula, and some of the Maryland factors should be given more weight than others. The maximum number of claims that can be aggregated is not an absolute, and the particular circumstances determine the outer limits *44 beyond which trial courts cannot go.’[13]
“A trial court must also ‘weigh the risk of prejudice or confusion against economy of scale.’[14]
“Consolidation is not improper merely because some factors indicate that dissimilarities exist within the consolidated claims. Rather, it is vital that a party seeking relief from a consolidation order establish how the differences among the consolidated claims will materially affect the fairness of a trial.[15]
“A further consideration is the maturity of the alleged tort.[16] In In re Bristol-Myers Squibb, we instructed lower courts to ‘proceed with extreme caution’ when consolidating claims of immature torts.[17] A tort is mature only when ‘ “there has been full and complete discovery, multiple jury verdicts, and a persistent vitality in the plaintiffs’ [contentions].” ’[18] Because no ‘toxic soup’ case has ever been tried or appealed in Texas, the tort is immature. Hence, the trial court has less discretion to consolidate dissimilar claims and must proceed with extreme caution....
[[Image here]]
145 S.W.3d at 207-08.
In Van Waters, the court analyzed the Maryland factors and determined that the defendants were entitled to a writ of mandamus ordering the trial court to vacate its consolidation order because the unrelated claims of the plaintiffs, based upon exposure to different chemicals in different combinations that resulted in different injuries, was so likely to confuse the jury as to prejudice the defendants’ rights. The court stated:
“Given the totally unrelated claims of plaintiffs exposed to entirely different chemicals produced by different defendants, consolidation risks the jury finding against a defendant based on sheer numbers, on evidence regarding a different plaintiff, or out of reluctance to find against a defendant with regard to one plaintiff and not another. The defensive theories as to many of these plaintiffs may also differ given the varying sources of exposure. The confusion created by multiple defensive theories is augmented in this case because there are fifty-five original defendants and at least nine remaining defendants. Similarly, confusion and prejudice could subsume the valid claim of a plaintiff based on an unrelated flaw or defense applicable to a different plaintiffs claim. Juror confusion and prejudice,- under these facts, is almost certain, and it would be impossible for an appellate court to untangle the confusion or prejudice on appeal.”
145 S.W.3d at 211 (footnote omitted).
We note that the instant case is substantially different from the situation in Van Waters, most significantly because the CMO here presents a trial of issues common to all the actions rather than a trial of *45 the entire cases of a group of plaintiffs. Thus, the CMO avoids many of the concerns noted in Van Waters by having separate trials for individual plaintiffs on the issues of causation and damages. In addition, the plaintiffs’ claims in these actions arise from exposure to a particular chemical, isocyanate, rather than a “toxic soup,” and the plaintiffs share the same occupation. And, of course, the court in Van Waters was considering the propriety of common issues that had already been identified and assessed by the trial court as appropriate for consolidated disposition, rather than considering what common issues might be selected by the trial court, as is the situation in the cases before us.
The defendants also assert that the trial court exceeded its discretion in entering the CMO because, they say,, the CMO contravenes Alabama’s doctrine of collateral estoppel and prevents them from asserting particular defenses. Specifically, the defendants argue that the CMO constitutes an “end run” around the requirement of mutual parties for collateral estoppel, permitting instead nonmutual offensive collateral estoppel concerning the plaintiffs’ allegations of the defendants’ negligence per se.
Collateral estoppel is an equitable defense interposed against a party attempting to relitigate an issue that has been resolved in an earlier case involving the same parties. This Court has stated:
“Collateral estoppel, also known as issue preclusion, is available as a defense to relitigation of an issue in a subsequent suit between the same parties which is not on the same cause of action. See, Conley v. Beaver, 437 So.2d 1267, 1269 (Ala.1983). In the case of Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court also sanctioned the use of collateral estoppel by a plaintiff in a subsequent suit to prevent the defendant from relitigating a previously decided issue. It is in this ‘offensive’ manner that the plaintiffs wanted to utilize the doctrine of collateral estoppel in the trial court. However, before the doctrine of collateral estoppel can be used in either the ‘offensive’ or ‘defensive’ manner, three elements must be present: (1) The issue must be identical to the one involved in the previous suit; (2) the issue must have been actually litigated in the prior action; and, (3) the resolution of the issue must have been necessary to the prior judgment. Conley, supra.”
Martin v. Reed, 480 So.2d 1180, 1182 (Ala.1985). Although the federal courts have held that mutuality—the requirement that the parties in both actions are the same— is no longer a prerequisite, Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), Alabama continues to require that a party may be barred from relitigating an issue, such as duty or breach, only if that issue has previously been found adversely to that same party. Smith v. Union Bank & Trust Co., 653 So.2d 933, 934 (Ala.1995). See also Unum Life Ins. Co. of America v. Wright, 897 So.2d 1059, 1077 (Ala.2004).
However, it should be noted that in Jones v. Blanton, 644 So.2d 882, 886 (Ala.1994), this Court questioned the necessity for the so-called rule of “mutuality of es-toppel.” In that case, Jones, the executrix of an estate, brought a legal-malpractice action against Blanton, the attorney who had represented the estate in a will contest and who had entered into a settlement with the parties contesting the will. The trial court granted Blanton’s motion for a summary judgment, and Jones appealed. The Court described the circumstances of the case as follows:
*46 “Jones sued under the Alabama Legal Services Liability Act (ALSLA), § 6-5-570 et seq., Ala.Code 1975, alleging that Blanton had breached his duty to comply with the standard of care required of attorneys in this state and that Wood’s estate suffered a loss as a result of Blanton’s breach of duty. The underlying action was a contest of Wood’s will, in which Blanton represented Jones as the proponent of the will. Blanton negotiated a settlement, in which the contestants agreed to release Jones and the estate from all claims in return for $40,000. Jones was present when Blan-ton read that agreement in open court on November 7, 1990, and she did not object when the court asked, ‘Is that the agreement of the proponents of the will?’ However, Jones subsequently refused to comply with the provisions of the agreement. She failed even to appear at a hearing on the contestants’ motion to enforce the settlement agreement. At the hearing, the trial judge ordered Jones to comply with the agreement.
“Jones then claimed that Blanton had exceeded his authority as her attorney in negotiating the settlement, that she had never authorized him to enter into such an agreement, and, therefore, that she should not be bound by that agreement. In Jones v. Stedman, 595 So.2d 1355 (Ala.1992), this Court, with an opinion by Justice Kennedy, affirmed the trial court’s denial of Jones’s Rule 59(e), Ala.R.Civ.P., motion to alter, amend, or vacate the order enforcing the settlement agreement. That opinion accepted the trial court’s implicit finding that because Jones was present when the settlement agreement was announced in open court and failed to object to it, Blanton had the apparent authority to settle the dispute with the contestants. Jones was therefore bound by the agreement. ...
[[Image here]]
“In this ease, Jones, as executrix of the Wood estate, is suing Blanton because of what she calls ‘willful and wrongful actions, failures, omissions, breaches of duty, breaches of conduct, insult, malice, neglect, and other stated wrongs’ and ‘violation of the standard of care applicable to an attorney at law.’ These actions and this violation, she claims, proximately caused a loss to the estate....
“The sole basis for this action, as Jones admits in her brief, is her contention that Blanton entered into the settlement without proper authority. Because this Court has previously affirmed a trial court’s judgment that was based on a finding that Blanton did have authority to settle the will contest, Blanton argues that the present action against him should be barred by the doctrine of collateral estoppel.”
644 So.2d at 884-85.
In addressing Blanton’s argument concerning collateral estoppel, the Court stated:
“Collateral estoppel would seem, on a first look, to be appropriate in this case, because the trial court in Jones v. Stedman, [595 So.2d 1355 (Ala.1992) ], found that Blanton did have the authority to settle the will contest and this Court affirmed the trial court’s judgment, relying on that finding. However, Blanton was not a party to that action, and Alabama follows the rule first set out by this Court in Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190, 1199 (Ala.1978), and since reaffirmed several times, that the parties to the second action must also have been parties to the first, in order for collateral estoppel to be applicable.
*47 “ ‘Collateral estoppel requires (1) an issue identical to one litigated in the prior suit; (2) that the issue [have] been actually litigated in the prior suit; and (3) that the resolution of that issue have been necessary to the prior judgment. In addition, the parties must have been the same in both suits. Where these elements are present, the parties are barred from relitigating issues actually litigated in a prior suit.’
“Lott v. Toomey, 477 So.2d 316, 319 (Ala.1985).
“This additional requirement, that the parties be the same in both actions, is known as the doctrine of mutuality of estoppel. It is a judicially created doctrine declaring that unless both parties in a second action are bound by the judgment in a previous case, neither party in the second action should be bound, i.e., a nonparty as to the first action may not use the prior judgment as determinative of the same issue in the second action. See, Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 320-21, 91 S.Ct. 1434, 1439, 28 L.Ed.2d 788, 795 (1971). Although many courts, including the Federal courts, have dispensed with the mutuality requirement, it remains the law in Alabama. Therefore, even though this Court based its judgment in Jones v. Stedman, supra, on a finding that Jones had given Blanton the authority to agree to a settlement, she is not barred from relitigating that issue in the case before us.[2]
[[Image here]]
S.Ct. 1434, 28 L.Ed.2d 788 (1971) (overruling Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), which had upheld the mutuality requirement); and Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (approving the use of ‘offensive’ collateral estoppel). See also, Restatement (Second) of Judgments, §§ 24-25, 27-29 (1982), and Comments.”
644 So.2d at 887 (emphasis omitted). Although the Court in Blanton appeared to consider dispensing with the doctrine of mutuality of estoppel, it determined that doing so was unnecessary in light of its determination that Jones’s claim under the Alabama Legal Services Liability Act was barred by the lapse of the applicable limitations period.
Since Blanton, the Court has decided the case of Biles v. Sullivan, 793 So.2d 708 (Ala.2000). The Sullivans, the plaintiffs in Biles, had earlier sued the Mazak Corporation alleging various claims of fraud. The jury found in favor of Mazak and a judgment in its favor was entered accordingly. Thereafter, the Sullivans discovered that Biles, a partner in the law firm of Wilkins, Bankester, Biles & Wynne, P.A., who had been hired by Mazak’s counsel as a jury consultant, was the brother-in-law of the jury foreman. When the jury was being struck, the trial court had asked Biles if he was “connected with this case,” and Biles had answered in the negative. The trial court subsequently granted the Sullivans a new trial on the basis of their Rule 60(b), Ala. R. Civ. P., motion, “but concluded that Biles had not engaged in any improper conduct.” 793 So.2d at 710. The Sullivans then sued Biles, his law firm, and others, asserting claims of fraud arising from Biles’s statement during the trial against Mazak. Biles and his firm defended the claim by asserting collateral estop-pel predicated on the trial court’s determi *48 nation in the Rule 60(b) proceeding in the ease against Mazak that Biles had not engaged in any improper conduct. This Court’s opinion, written by Justice England and concurred in by Chief Justice Hooper and Justices Maddox, Houston, and Brown, held that the doctrine of collateral estoppel applied to bar the Sullivans’ claims against Biles and his law firm, along with the other defendants in the second action, because “[t]he parties involved” in the Rule 60(b) proceeding “are the same parties that Sullivan named in the complaint in the [second] action.” 793 So.2d at 713. Justice Houston wrote a special concurrence, noting that a violation of the Alabama Rules of Professional Conduct could not support the Sullivans’ claims under Terry Cove North, Inc. v. Marr & Friedlander, P.C., 521 So.2d 22 (Ala.1988). In part, Justice Johnstone joined Justice Houston’s special concurrence, but noted:
“I question whether the elements of collateral estoppel are present as a defense for Biles and Wilkins-Bankester. While the order granting a new trial in the [first action] was appealable, I question whether it constitutes a ‘prior judgment’ sufficient to estop Sullivan in [the second] action. Moreover, neither Biles nor Wilkins-Bankester was a party to the [first] action. Thus, no judgment in that action could collaterally estop Sullivan from suing them in [the second action].”
793 So.2d at 714. Thus, the Court determined implicitly that the doctrine of mutuality of estoppel was not an impediment to application of collateral estoppel in favor of Biles and his firm, given that they had been “involved” in the Rule 60(b) proceeding.
Moreover, this Court has otherwise recognized that the doctrine of mutuality of estoppel may be satisfied by less than a perfect identity of the parties in the first and second actions, as when particular parties are in privity. In Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 821 So.2d 158 (Ala.2001), a case in which the Court noted a long series of lawsuits arising from earlier business transactions between the parties that had preceded the controversy then before it, the Court considered Merrill Lynch’s defense of collateral estoppel arising from a prior action involving Leon C. Baker and Merrill Lynch in which the trial court had determined that Baker, the sole shareholder of Leon C. Baker, P.C., was the owner of a brokerage account in the name of Leon C. Baker, P.C. When Leon C. Baker, P.C., asserted a claim in arbitration against Merrill Lynch for damages based on allegations of improper transfers to the account, Merrill Lynch sought an injunction in the trial court barring the arbitration claim on the ground of collateral es-toppel. The trial court granted Merrill Lynch’s relief, and Leon C. Baker, P.C., appealed. Thus, the Court considered whether the defense of collateral estoppel applied in light of the fact that Leon C. Baker, P.C., had not been a party to the first lawsuit. The Court stated:
“[T]he only element about which there is a colorable controversy is the identity of the parties. Specifically, Baker and the PC contend that the doctrine of collateral estoppel does not bar the PC’s claims before the NASD [National Association of Securities Dealers, Inc.], because, they insist, the PC was not a party in Alabama-Baker TV [the first lawsuit]. To be sure, the PC was not a named party in that case. Ordinarily, ‘[a] party to the second suit will not be estopped from relitigating an issue unless all of the requisite elements exist. It is noteworthy that Alabama has not followed the trend of abolishing the requirement that parties be identical, sometimes referred to as the mutuality of estoppel *49 requirement.’ McMillian v. Johnson, 878 F.Supp. 1473, 1520 (M.D.Ala.1995), rev’d in part on other grounds, 88 F.3d 1554 (11th Cir.1996), cert. denied, 521 U.S. 1121, 117 S.Ct. 2514, 138 L.Ed.2d 1016 (1997). ‘An exception is made to this requirement for parties in privity with a party to the prior action.’ Id. (emphasis added). Thus, regardless of the fact that the PC was not a named party in Alabama-Baker IV, it will be bound by that judgment if it was in privity with Baker.
“ ‘ “The term ‘privity’ has not been uniformly defined with respect to [collateral estoppel].” ’ Hughes v. Martin, 533 So.2d 188, 191 (Ala.1988) (quoting Issue Preclusion in Alabama, 32 Ala. L.Rev. 500, 520-21 (1981)). Privity is often deemed, however, to arise from ‘ “(1) the relationship of one who is privy in blood, estate, or law; (2) the mutual or successive relationship to the same rights of property; [or] (3) an identity of interest in the subject matter of litigation.” ’ Id. Thus, the existence of privity has generally been resolved ‘ “on an ad hoc basis in which the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment.” ’ Id. See also Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 726 (Ala.1990) (collecting cases).”
821 So.2d at 165. The Court determined that Baker and Leon C. Baker, P.C., were “in privity” so that doctrine of mutuality of estoppel was satisfied.[4]
In the instant action, the CMO sets up a plan by which a trial court will conduct a common-issues trial pitting the 27 plaintiffs in the original Bice case against all the defendants. These plaintiffs potentially would present evidence “as to liability and [factual] causation,” while later plaintiffs would have the burden merely to demonstrate “specific [proximate] causation and damages.” Any determination at the common-issues trial as to liability or factual causation would then bind all the defendants, and according to the defendants, would bind them regardless of whether any of the 1,648 remaining plaintiffs could demonstrate that that plaintiffs situation aligns with that of a plaintiff involved in the common-issues trial.
Here again we must reiterate that the common-issues trial is not as “binding” as it appears at first blush. Despite the implication that it will be binding to the later trials, the schedule for these trials indicates that the defendants will be afforded a pretrial opportunity to challenge whether the issues determined at the common-issues trial to be common are truly common with respect to the plaintiffs in the later trials. The CMO sets out a scheduling order that, each month, simultaneously designates 25 additional plaintiffs and lifts the stay on discovery as to those 25 plaintiffs. The defendants are then entitled to conduct broad discovery with respect to each plaintiff and to file “dispositive motions” with the trial court.
Nevertheless, at section 3, “Consolidation,” the trial court stated:
“The above styled cases are consolidated for pretrial purposes, discovery, motions, and trial under [Ala. R. Civ. P.] *50 42(a). This order constitutes a determination that these actions are consolidated for trial.”
Subsequent provisions of the CMO establish a procedure for identifying at a later date “the issues appropriate for aggregate determination.” See, e.g., section 5, “Refinement of Issues.” Obviously, in light of the subsequent provisions, the language of section 3, which, on its face, consolidates the cases for trial without limitation, sweeps too broadly. While this result may be nothing other than syntactical oversight, we issue the writ to the extent necessary to require the.trial court to modify the CMO so as to make clear that the consolidation for trial contemplated by section 3 is subject to the limitations provided for elsewhere in the CMO and is dependent upon findings that warrant consolidation for trial in subsequent proceedings. At this initial stage of the litigation, subject to the aforementioned modification, the CMO appears to comport with the purpose of consolidation as a device to manage the cases more effectively.
“The very purpose of consolidation is to expedite litigation, and save money. Though parties in consolidated actions retain their separate identities and the parties and pleadings in one action do not become parties and pleadings in the other, there is a mutuality of issues and law, in some degree, and all parties participate in the trial and determination of the common issues. It was said in Haddad v. Border Express, Inc., 300 F.2d 885 (1st Cir.1962), that ‘plaintiff is bound, however, not by privity, but by participation.’ ”
Teague v. Motes, 57 Ala.App. 609, 613, 330 So.2d 434, 438 (Ala.Civ.App.1976). See also Herren v. Beck, 231 Ala. 328, 164 So. 904 (1935), and Ex parte Green, 221 Ala. 415, 129 So. 69 (1930), holding generally that consolidation of actions does not destroy' the identity of those actions, but rather provides a means of avoiding repetitious litigation. Consequently, the defendants have not shown that they will be deprived of the opportunity to fully litigate every issue in the consolidated eases or that the doctrine of collateral estoppel will deprive them of that opportunity. We will not, therefore, issue mandamus relief on the possibility that such a situation might arise. Ex parte Vance, supra.
The defendants also assert that a common-issues trial will deprive them of any effective right to appeal. Although we might simply note that this argument is also based upon speculation as to what may occur in the future and thus mandamus relief is inappropriate, the opportunity to seek mandamus relief would be available with respect to issues upon which the defendants could show a clear legal right to relief. Ex parte Empire Fire & Marine Ins., supra. Further, the remedy of appeal by permission pursuant to Rule 5, Ala. R.App. P., could also be available as to issues meeting the criteria of that rule. We conclude that the possibility that the circumstances under which the defendants would be able to appeal would not be those circumstances they would prefer does not support this Court’s interfering at this stage with the trial court’s discretion in managing its cases.
The defendants also argue that the trial court exceeded its discretion in issuing the CMO because, they say, the trial court erred in determining that venue in Jefferson County was proper under Ala. Code 1975, § 6-3-7(c). That statute provides, in pertinent part:
“[V]enue must be proper as to each and every named plaintiff joined in the action, unless the plaintiffs shall establish that they assert any right to relief jointly, severally, or arising out of the same transaction or occurrence and that the *51 existence of a substantial number of questions of law or material fact common to all those persons not only will arise in the action, but also: (1) that such questions will predominate over individualized questions pertaining to each plaintiff; (2) the action can be maintained more efficiently and economically for all parties than if prosecuted separately; and (3) that the interest of justice supports the joinder of the parties as plaintiffs in one action.”
We must determine whether the defendants have shown a clear legal right to mandamus relief requiring the trial court to modify its CMO, at least to the extent of transferring the cases of those plaintiffs as to whom venue is not otherwise proper in Jefferson County.
“The burden of proving that venue is improper in the county in which a suit is brought is upon the party making such a claim. Ingram v. Omelet Shoppe, Inc., 388 So.2d 190 (Ala.1980); Medical Service Administration v. Dickerson, 362 So.2d 906 (Ala.1978); Johnson Publishing Co. v. Davis, 271 Ala. 474, 124 So.2d 441 (1960). When a party petitions for writ of mandamus to set aside an order transferring venue, this Court is to ascertain whether the trial court abused its discretion or exercised it in an arbitrary and capricious manner. Ex parte Wilson, 408 So.2d 94 (Ala.1981).”
Ex parte Nelson, 448 So.2d 339, 340 (Ala.1984). See also Unum Life Ins. Co. of America v. Wright, 897 So.2d 1059 (Ala.2004), and Ex parte Pratt, 815 So.2d 532 (Ala.2001). Our standard of review for a challenge to the trial court’s denial of a motion for a change of venue is whether the trial court exceeded its discretion in denying the motion. Ex parte Perfection Siding, Inc., 882 So.2d 307 (Ala.2003).
In Unum, we addressed the effect of § 6-3-7(c) in the context of an action filed by numerous insureds to compel their insurer to arbitrate their claims that they were fraudulently induced to purchase salary-replacement policies by the insurer and its agents (“Unum”). Among other issues, Unum challenged the propriety of the trial court’s order ruling that venue in Bullock County was proper with respect to the claims brought by more than 400 of the insureds in the Wright case.
“There being over 400 plaintiffs in the Wright case, but only two as to whom venue in Bullock County is directly proper, we must consider the effect of § 6-3-7(c) in that case. If the criteria specified in § 6-3-7(e) are met for the remaining plaintiffs, then venue in Bullock County becomes derivatively proper for them. Ex parte Pratt, 815 So.2d 532 (Ala.2001).
[[Image here]]
“Section 6-3-7(e) permits joinder of plaintiffs as to whom venue might not be proper if, first, ‘they assert any right to relief jointly, severally, or arising out of the same transaction or occurrence.’ As noted, the plaintiffs in the Wright case instituted their action to obtain a court order compelling Unum to arbitrate in accord with the arbitration agreement allegedly contained in each of their policies of insurance.
“The right to that specific relief (along with the incidental relief of the selection of an arbitrator by the court if the parties could not mutually agree upon one) was the only right to relief asserted. Thus, it is that ‘right to relief to which the criteria of § 6-3-7(c) must be applied. The context and positioning of the words ‘jointly’ and ‘severally’ in the phrase found in § 6-3-7(c) — ‘they assert any right to relief jointly, severally, or arising out of the same transaction or occurrence’ — -clearly indicate that those words are implicitly separated by the *52 coordinating conjunction ‘or.’ Therefore, this aspect of the § 6-3~7(c) criteria is satisfied if the plaintiffs in the Wright case assert the right to the relief of arbitration, under identical arbitration provisions in identically framed policies of insurance, either ‘jointly’ or ‘severally.’ Black’s Law Dictionary (8th ed.2004) defines ‘severally’ as follows: ‘adj. Distinctly; separately < severally liable>.’ The American Heritage Dictionary of the English Language (4th ed.2000) includes within its definitions of the term the following: ‘Single; distinct ... Respectively different; various: They parted and went their several ways.’ The plaintiffs in the Wright case clearly assert ‘severally’ the right to compulsory arbitration, each relying on the same arbitration agreement contained in identically framed Unum insurance policies. Did [the trial judge] exceed his discretion in applying to this severally asserted right to relief the remainder of the § 6-3-7(c) criteria? In other words, can it be reasonably concluded that
“ ‘the existence of a substantial number of questions of law or material fact common to all those persons not only will arise in the action, but also: (1) that such questions will predominate over individualized questions pertaining to each plaintiff; (2) [that] the action can be maintained more efficiently and economically for all parties than if prosecuted separately; and (3) that the interest of justice supports the joinder of the parties as plaintiffs in one action?’
“§ 6-3-7(c), Ala.Code 1975 (emphasis supplied).”
Unum, 897 So.2d at 1079-80.
In this case, we must consider whether the defendants have shown that the trial court exceeded its discretion in holding that venue in Jefferson County was proper under § 6-3-7(e). We note that each plaintiff asserts that he or she was harmed as a result of the same occurrence or transaction,[5] i.e., exposure to isocyanate while employed as a coal miner, and each plaintiff asserts a separate, “several” claim for damages based on personal injury as a result of that occurrence. With *53 respect to “predominance,” the issues tentatively identified at this point apply to critical elements of each plaintiffs claim; the plaintiffs’ failure to meet the proof requirements of these common issues will likely end this litigation.[6]
Nevertheless, because the CMO defers to a later date the refinement of the common issues, a determination as to the propriety of venue as to plaintiffs Daniel R. Boyd, Debra C. Butler, and Bryan M. Kelley, all of whom testified that their only isocyanate exposure occurred outside of the Bessemer division of Jefferson County, is premature. Consequently, as to these plaintiffs, the trial court’s holding that venue is proper in the Bessemer division of Jefferson County is premature; therefore, in so holding the trial court exceeded its discretion, and we grant the petition and instruct the trial court to vacate that part of the CMO that holds that the venue as to the plaintiffs Boyd, Butler, and Kelley is proper in the Bessemer division of Jefferson County.
Finally, the defendants assert that in the CMO the trial court exceeded its discretion by providing for a special master to conduct trials on issues specific to each individual plaintiff. The defendants assert, without reference to any binding authority, that the designation of a special master in the CMO is an impermissible delegationof judicial authority under Rule 53(e), Ala.R.Civ.P.[7] The plaintiffs assert that the appointment of a special master in the context of the CMO is within the trial court’s authority under Rule 53(c), which states:
“(c) Powers. The order of reference to the master may specify or limit the master’s powers and may direct the master to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of the master’s report. Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before the master and to do all acts and take all measures necessary or proper for the efficient performance of the master’s duties under the order. The master may require the production before the master of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. The master may rule upon the admissibility of evidence unless otherwise directed by the order of reference and has the authority to put witnesses on oath and may examine them and may *54 call the parties to the action and examine them upon oath. When a party so requests, the master shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in the Alabama Rules of Evidence for a court sitting without a jury.”
However, that subsection of Rule 53 is preceded by Rule 53(b), which states:
“In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.”
Further, Rule 53(e)(3) states:
“In an action to be tried by a jury the master shall not be directed to report the evidence. The master’s findings upon the issues submitted to the master are admissible as evidence of the matters found and may be read to the jury, subject to the ruling of the court upon any objections in point of law which may be made to the report.”
We construe these subsections in pari materia. See, e.g., Ex parte State Dep’t of Revenue, 624 So.2d 582 (Ala.1993)(discuss-ing the court’s duty to construe statutory provisions consistently with each other so as to give coherence to the statute as a whole). Under such a construction, Rule 53 does not envision that a trial court could appoint a special master with the authority to conduct a jury trial. Moreover, we cannot conclude that Rule 53, a rule of procedure, is sufficiently broad to vest the trial court with authority to appoint a special master with the same authority as is “exclusively vested” in the judicial system. Ala. Const.1901, Amend. No. 328, § 6.01.
This Court has stated:
“The function of a ‘judge’ is to determine controversies between litigants, and they are not advisers. In re Richardson, 247 N.Y. 401, 160 N.E. 655 [(1928)]. A ‘judge’ is one who presides over a court. State ex rel. Madden v. Crawford, 207 Or. 76, 295 P.2d 174 [ (1956) ]. His ‘judicial acts’ are the performance of duties which have been confided to him as a judicial officer to be exercised in a judicial way. Supervisors of Onondaga v. Briggs, (N.Y.) 2 Denio 26 [ (1846) ].
“As stated by Chancellor Kent, ‘The general rule is that judicial offices must be exercised in person, and that a judge cannot delegate his authority to another. I do not know of any exception to this rule with us.’ 3 Kent Com. 12th Ed. 457.”
Opinion of the Justices No. 187, 280 Ala. 653, 658, 197 So.2d 456, 461 (1967). Further, the courts of this State have recognized that judicial functions, such as declaring a mistrial, Parham v. State, 47 Ala.App. 76, 250 So.2d 613, 617 (Ala.Crim.App.1971), or striking jurors, Russaw v. State, 572 So.2d 1288 (Ala.Crim.App.1990), may not be delegated in the absence of specific statutory authority. To the extent that the CMO would appoint a special master who would conduct jury trials with respect to the claims of the specified 25-member plaintiff groups with the same authority as that constitutionally vested in the trial court, such an appointment would be an improper delegation of judicial power and would exceed the trial court’s discretion.[8] Because we do not necessarily *55 understand that the CMO contemplates that the special master will preside over jury trials, as opposed to handling functions otherwise assignable to a special master under Rule 58, mandamus relief on this point would be premature.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
NABERS, C.J., and SEE, LYONS, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
WOODALL, J., concurs in the result.

. Isocyanate is the term used by the parties for diphenylmethane diisocyanate, also described, in its various chemical forms, as MDI and PMDI. MDI is used in the manufacture of polyurethane elastomers such as rollers, packing, rubber vibration insulators, synthetic leather, spandex fibers, and rubber shoe soles. PMDI is used to make rigid and flexible foam, foundry resin sand binders, and heat insulating material. The isocyanate products at issue in this case were used as sealants and stabilizers for walls and ceilings in coal mines.

. The scheduling order of the federal district court in Owens v. Monsanto Co. (CV-96-P-0440-E) is attached as an appendix to this Court’s opinion in Monsanto.

. As noted by the court in Ethyl, the "Maryland factors” were first articulated in an unreported decision of a federal district court, In re All Asbestos Cases Pending in the United States District Court for the District of Maryland (D.Md. Dec. 16, 1983) (en banc).

“9[In re] Ethyl [Corp.], 975 S.W.2d 606 at 614-15 [ (Tex.1998) ].

“10Id. at 612 (quoting Consorti v. Armstrong World Indus., Inc., 72 F.3d 1003, 1008 (2d Cir.1995)).

“11Id. at 610.

“12Id. at 611.

“13Id.

“14Id.

“15[In re] Bristol-Myers [Squibb], 975 S.W.2d [601] at 603-04 [ (Tex.1998) ]

“16Ethyl, 975 S.W.2d at 610.

“17Bristol-Myers, 975 S.W.2d at 603.

“18Id. (quoting McGovern, An Analysis of Mass Torts for Judges, 73 Tex. L.Rev. 1821, 1843 (1995)).”

“2For a discussion of the issues involved in dropping the mutuality requirement, as well as how and why the Federal courts did so, see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91

. We also note that in Lott v. Toomey, 477 So.2d 316 (Ala.1985), while addressing the claims of res judicata and collateral estoppel, the Court stated:
“In order for one suit to bar subsequent litigation, the parties must have been substantially the same in both cases. This means that the parties in both cases must be either the same, or in privity of estate, blood, or law with the original parties. Clark v. Whitfield, 213 Ala. 441, 444, 105 So. 200, 203 (1925).“
477 So.2d at 319.

. The parties cite no authority in this State directly defining the phrase "transaction or occurrence," and we have independently found none. However, the broad definition used by the federal courts in analyzing challenges to permissive joinder under Rule 20, Fed.R.Civ.P., substantially identical to Rule 20, Ala. R. Civ. P., is helpful:
"The first requirement for joinder is that the claims must 'aris[e] out of the same transaction, occurrence, or series of transactions or occurrences. Fed.R.Civ.P. 20(a). ' "Transaction” is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir.1974) (citation and internal quotation marks omitted); see also LASA Per L’Industria Del Marmo Societa Per Azioni v. Alexander, 414 F.2d 143, 147 (6th Cir.1969). '[Ljanguage in a number of decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court.' 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1653.”
DIRECTV, Inc. v. Barrett, 220 F.R.D. 630, 631-32 (D.Kan.2004). See also Jamison v. Purdue Pharma Co., 251 F.Supp.2d 1315 (S.D.Miss.2003); and Advamtel, LLC v. AT & T Corp., 105 F.Supp.2d 507 (E.D.Va.2000)(noting generally that the "transaction or occurrence” test rule is designed to permit all reasonably related claims for relief by or against different parties to be tried in single proceeding).

. "Predominance” is most frequently defined in the context of class-action certifications. " 'The predominance requirement is met if there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a single adjudication.' Heartland Communications, Inc. [v. Sprint Corp.], 161 F.R.D. [111] at 117 [(D.Kan.1995)]; see Cheminova America Corp. v. Corker, 779 So.2d 1175, 1181 (Ala.2000).” Avis Rent A Car Systems, Inc. v. Heilman, 876 So.2d 1111, 1120 (Ala.2003). "Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member’s effort to establish liability and on every class member’s entitlement to injunctive and monetary relief.’ Ingram v. Coca-Cola Co., 200 F.R.D. 685, 699 (N.D.Ga.2001).” Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir.2004).

. The defendants do refer to Trammell v. State, 785 So.2d 398 (Ala.Crim.App.2000), but that case discusses the invalid appointment of a special circuit judge under §§ 12-1-14 and 12-17-22, Ala.Code 1975; that judge was disqualified from deciding the case because he was not a resident of the county in which he conducted the proceedings at issue.

. We note that this holding that the trial court cannot appoint a special master to serve in that role does not necessarily forestall the possibility of a special judge who would have the authority to conduct jury trials of the claims of the 25-member plaintiff groups, but such a special judge would have to be vested with his or her authority pursuant to statute, such as Ala.Code 1975, §§ 12-1-14, 12 — 1— 14.1, or 12-1-14.2.